APPEAL OF LOUIS COHEN.

Docket No. 5398.   Decided October 26, 1926.

An individual keeping his books of account on the accrual basis and setting aside on those books amounts to be held by him in trust and to be paid to his sons at a future date under the circumstances stated herein, is not entitled to deduct such amounts from gross income in income-tax returns as ordinary and necessary expenses.

*John G. Jaeger, Esq.,* for the petitioner.
*John W. Fisher, Esq.,* for the Commissioner.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1919 in the amount of $2,623.78, arising from the addition to the net income returned of certain amounts set apart from the petitioner's books of account to be paid to three sons.

FINDINGS OF FACT.

The petitioner is a resident of Baltimore, Md., and is and was in 1919 engaged in the wholesale wall paper jobbing business under the trade name of The National Wall Paper Co.  In addition to conducting his individual business, he was a member having a one-third interest in the partnership carrying on business under the name and style of West Baltimore Wall Paper Co., of Baltimore, Md.; a member of a like partnership and having a like interest in the Capital Wall Paper Co., of Washington, D. C.; and a stockholder having approximately a one-third interest in the Stahl Wall Paper Co., Inc., of Richmond, Va.  In the conduct of his individual business the petitioner selected samples of wall paper and bound from 800 to 1,000 samples in a sample book.  He made up for his trade four or five different books and these were sent to prospective customers.  The taxpayer purchased the paper from factories and sold it to thousands of different customers, including the partnerships of which he was a member.

In 1919 the taxpayer had in his individual employ three sons, Samuel, age 25, Jacob, age 22, and Benjamin, age 19.  Each of these sons had entered his employ when about 15 or 16 years of age.  In 1918 and 1919, Samuel was drawing a salary of $4,000, and Jacob and Benjamin were drawing weekly salaries of $25 and $20, respectively. The sons desired larger compensation or a right to participate in the business.  The taxpayer did not think that they should have larger salaries to do with as they chose, but in lieu thereof entered into

57694°—27——15

an agreement with them under date of January 1, 1919, which reads as follows:

THIS AGREEMENT, Made as of January 1st, 1919, by and between Louis Cohen, of the first part, and Jacob Cohen, Samuel Cohen and Benjamin Cohen, of the second part, all of Baltimore City, in the State of Maryland,

WHEREAS the said Louis Cohen is engaged in the wholesale wall paper jobbing business in Baltimore and is holding certain interests in similar enterprises, viz: in the West Baltimore Wall Paper Company of Baltimore, Md., the Capital Wall Paper Company of Washington, D. C., and the Stahl Wall Paper Company, Inc., of Richmond, Va., and whereas the several parties of the second part are employed by and working with the said Louis Cohen and are actively engaged in promoting the prosperity of the business and allied enterprises conducted by said Louis Cohen, their father, and whereas said Louis Cohen, is desirous to make the employment of his said sons as attractive as possible and to furnish special incentive, in addition to the salary they are now receiving, and in order to foster their interest in the business and interests held and owned by their said father, and whereas it is the desire of the said Louis Cohen that the inducements and interest given by him to said sons in consideration of their services and efforts, shall enure to the benefit of his said sons at certain times as hereinafter provided,

NOW THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises and the promise and agreement on the part of said sons, to continue their active work and interest for the continuous welfare and prosperity of the business and interests built up by said Louis Cohen from very small beginning and to insure a continuance of said business and allied interests by binding said sons to said business, the said Louis Cohen, doth hereby covenant and agree to pay unto each of said three sons, viz: Jacob, Samuel and Benjamin, twenty-five per cent of the net amount received annually by him from his interest in the said West Baltimore Wall Paper Company and the Stahl Wall Paper Co., Inc., to begin with the earnings for the year 1919, and to affect no prior earnings whatsoever.

AND the said Louis Cohen hereby covenants to open accounts on his regular business ledger for his said three sons, and that the amount due them under the terms of this agreement shall be credited to them in the ordinary course of business as the said Louis Cohen receives the share in the profits from the several concerns hereinbefore mentioned, but shall be no later than February 15th in each and every year, and the said sons shall have the right to inspect said accounts at any and all times, but neither of them shall have the right to draw upon any amount standing to their credit, except as hereinbefore provided, it being agreed and understood, that said accounts shall be held in trust by said Louis Cohen for the several sons, parties of the second part, hereto, until such time as each of them shall marry, at which time, the amount standing to the credit of said son or sons shall be paid over to him, together with interest at the rate of 3 per cent per annum.

Provided however that it is required of each son, that when he or they do marry, that they marry or contract marriage with a party of the Jewish faith and Jewish parentage, subject to the approval of the said Louis Cohen and his wife, Sarah Cohen. This provision is made a part of this agreement, because it also constitutes a part of the last will and testament of said Louis Cohen and is fully agreed to and understood by the said sons.

And provided further, in the event, that any or all of said parties of the second part, shall not marry prior to arriving at the age of thirty-five

years, then and in that event, such son or sons, shall be entitled to receive payment of the amount standing to his or their credit as hereinbefore provided.

And further provided, in the event that the said Louis Cohen shall deem the conduct, behavior and endeavors of his said sons, in and about the business and allied enterprises, insufficient and unsatisfactory, and therefore on account of the lack of interest and zeal, on the part of any or all of said sons, decide that such son or sons is no longer entitled to share in the profits as hereinbefore provided, then and in that event the question whether or not such son or sons is or are doing his or their best to further the interest of the said business and allied enterprises, shall be submitted to a Board of Arbitration to consist of three men, to be selected as follows: one by said Louis Cohen, one by such son or sons, and the two so selected shall choose an umpire between themselves, and a Board of Arbitration elected in a similar manner shall be called, in the event that said Louis Cohen and his wife shall object to the person selected as bride by any one or all of said sons, and such son or sons shall feel aggrieved by said objection, but in the latter event, it shall be a condition agreed upon and accepted by all the parties hereto, that such Board of Arbitration shall consist solely of men of Jewish Faith.

And in the event, that such Board of Arbitration shall determine that such son or sons has failed in his or their performance of the conditions and agreements herein provided for, and is no longer entitled to the profits and emoluments as herein specified to be received by him or them, then and in that event this agreement shall cease and terminate as to such son or sons and the share or shares to which he or they would have been entitled in accordance with the provisions herein contained, shall again be and become the sole property of said Louis Cohen, and it is agreed and understood that the decision of said Board of Arbitration shall be accepted by all the parties hereto and it is agreed that such decision, if necessary, may be made the order or decree of any Court of Record of Baltimore City. And provided further that such decision shall always date back to the last division or entry of profits for the preceding year, so that such son or sons shall be excluded from his participation in the profits for the year during which it may be decided that he or they have broken their agreement, but all such amounts as may stand to the credit of such son or sons at the time the decision is rendered by the Board of Arbitration, shall be held by said Louis Cohen in trust for such son or sons until the time arrives when he or they shall be entitled to receive same in accordance with the provisions hereinbefore contained.

The special inducement and interest hereinbefore provided by said Louis Cohen, for his said sons, is not made solely for the purposes of accelerating the interest in his business by the said sons, for pecuniary reasons alone, but because it is the heartfelt desire of said Louis Cohen that the large business and the name he has established in the wall paper business, may be continued by his sons as a monument to the genius of the father, who through poverty and adversity, by unfailing zeal and hard labor, established the business and allied enterprises and made the name of Louis Cohen a byword in the wall paper business.

The sons worked for the father during the year 1919, oftentimes working late at night and also on Sundays. Their time was spent almost exclusively in the store of the petitioner in Baltimore, al-

though they worked for the interests of the two partnerships of which the petitioner was a member and also of the corporation with principal office at Richmond, Va.

Prior to the date of the hearing one of the sons had married and was paid at that time $7,000 or $8,000 of the amount that stood to his credit upon the petitioner's individual books of account. He would have been paid the balance at that time as per the terms of the agreement if he had demanded it.

The petitioner's books of account of individual business showed the receipt of money from the partnerships and the allocation thereof to the sons and to the father as provided by the agreement. The total income of the petitioner from the partnerships for the year 1919 amounted to $15,901.83. The petitioner returned as income one-fourth of this amount, or $3,833.68. The balance was not returned as income of the petitioner but was claimed to constitute income of his three sons held in trust by the father.

The three sons were not made members of the partnerships.

### OPINION.

SMITH: In this proceeding the petitioner contends that the Commissioner erred in adding to the net income reported by him amounts credited to his three sons for the year 1919, under the agreement dated January 1, 1919. It appears that the petitioner originally contended that a portion of the partnership profits to which he became entitled constituted no part of his income by reason of the agreement. We think that the entire amount of partnership profits to which the petitioner became entitled for the year 1919, as a result of being a member of two partnerships, constituted income to him, and that the agreement of January 1, 1919, does not warrant the petitioner's failure to include in his gross income any part of the partnership profits so accrued to him. *Appeal of Ormsby McKnight Mitchel*, 1 B. T. A. 143; *Mitchell* v. *Bowers*, 9 Fed. (2d) 414. The sons were not made members of the partnerships. We also think that the petitioner was required to include in his gross income the dividends, if any, which he received during the year 1919 upon his shares of stock in the Stahl Wall Paper Co., Inc., of Richmond, Va.

But it is the contention of the petitioner that if a proportionate amount of the partnership profits set aside for the benefit of his sons must be included in his gross income he is entitled to deduct therefrom the amounts placed to the credit of his sons upon his books of account as additional compensation paid to them under the agreement of January 1, 1919; that the sons were receiving inadequate compensation for services performed and that the agreement was

entered into in lieu of paying to them outright a larger amount of money than they had received during the preceding year.

The taxing statute permits an individual to deduct from gross income in his income-tax return:

All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * * (Section 214(a) (1), Revenue Act of 1918.)

This language is explicit and unambiguous. The simplicity of the language should be preserved in its interpretation. The petitioner paid his sons certain amounts to compensate them for their services. The amounts that were actually paid undoubtedly constituted ordinary and necessary expenses of doing business. The father was, however, interested in the future welfare of his sons and desired that they should marry girls of Jewish parentage. In order to accomplish this result, the agreement of January 1, 1919, was entered into. The agreement was not solely one of compensation for services rendered. We think that amounts set aside by the petitioner upon his books of account in fulfillment of the agreement were not ordinary and necessary expenses of the individual in the conduct of his business.

> *Judgment will be entered for the Commissioner.*

PHILLIPS concurs in the result only.